UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

MIGUEL A. ALVAREZ,                           )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )        Case No. 4:21-cv-04190-SLD-JEH
                                             )
REGIONS COMMERCIAL ROOFING INC,              )
                                             )
                    Defendant.               )

ORDER

Before the Court is Plaintiff Miguel A. Alvarez's Third Motion for Default Judgment,

ECF No. 46. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN

PART.

BACKGROUND[1]

Alvarez was an independent contractor providing sales and project management services

to general contractors. Regions Commercial Roofing Inc ("Regions") was a general contractor,

focusing on roofing and siding contracting. On or about September 2020, Alvarez and Regions

entered into an oral contract, wherein Alvarez would secure construction contracts for Regions

and receive: (1) an incentive bonus of 5% of the total construction contract price for each

contract he secured for Regions; (2) commission of 50% of the net profit for each job which was

completed and paid; and (3) a $3,000 bonus for every $250,000 in total sales that he collected.

These terms were recorded in a written document which neither party signed. *See* Regional

---

[1] The Court recites the facts as alleged in Alvarez's Complaint, ECF No. 49 at 11–16, and his Amended Count II to
Complaint, ECF No. 26, because default has been entered against Regions Commercial Roofing Inc and the pending
motion concerns the entry of a default judgment, *see* Jan. 5, 2024 Entry of Default; *Dundee Cement Co. v. Howard
Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a
complaint relating to liability are taken as true.").

Sales Manager Agreement, Compl. Ex. 1, ECF No. 49 at 18–22.  Unbeknownst to Alvarez, Regions was not properly licensed as a roofing contractor despite performing roofing work in Illinois.  License Search, Compl. Ex. 2, ECF No. 49 at 24–26 (showing that Regions did not appear in a search for licensed roofing contractors in a database maintained by the Illinois Department of Financial and Professional Regulation); *see* 225 ILCS 335/9(1) ("It is unlawful for any person to engage in the business or act in the capacity of or hold himself, herself, or itself out in any manner as a roofing contractor without having been duly licensed under the provisions of th[e Illinois Roofing Industry Licensing] Act.").  Regions failed to pay Alvarez compensation which was owed to him under their oral contract.  That unpaid compensation included the promised 50% of the net-profit commission on ten specific contracts.  *See* Redacted Customer Contracts, ECF No. 22 (copies of the ten contracts).[2]

Alvarez filed a complaint against Regions in state court, asserting two counts: (1) Count I for breach of contract; and (2) Count II for violation of Illinois's Sales Representative Act ("SRA"), 820 ILCS 120/0.01–3.  Regions removed the case to federal court, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332.  *See generally* Not. Removal, ECF No. 1. Regions asserted counterclaims for tortious interference with prospective economic advantage and for defamation by libel.  *See* Am. Answer & Countercls. 7–10, ECF No. 8.  The Court granted Regions' motion to dismiss Count II.  *See* Sept. 14, 2022 Order 9, ECF No. 21.  Alvarez sought leave to file an amended version of Count II, which was granted as it was unopposed.  *See* Oct. 6, 2022 Text Order (Hawley, M.J.).

---

[2] These contracts were included in Alvarez's complaint, *see* Unredacted Customer Contracts, ECF No. 1-1 at 31–50, and contained unredacted versions of individuals' addresses and signatures, in violation of the Court's Local Civil Rules, *see* Sept. 14, 2022 Order 8–9, ECF No. 21 (citing Civil LR 5.11(A)).  Pursuant to the Court's order, Alvarez filed properly redacted versions of these contracts.  *See* Redacted Customer Contracts.

Three attorneys appeared on Regions' behalf and subsequently withdrew from the case. *See* Jan. 20, 2023 Text Order (Hawley, M.J.); Oct. 13, 2023 Min. Entry (Hawley, M.J.). The Court denied Regions' request for court-appointed counsel. May 3, 2023 Text Order. Regions disregarded an order to appear at a certain proceeding and failed to obtain new counsel despite multiple extensions of time to do so from the Court. *See* Jan. 4, 2024 Text Order (Hawley, M.J.). Default was then entered against Regions. Jan. 5, 2024 Entry of Default. The Court dismissed Regions' counterclaims for failure to prosecute. Jan. 8, 2024 Text Order. Alvarez then filed his Third Motion for Default Judgment and a supporting memorandum of law. *See generally* Third Mot. Default J.; Mem. Supp. Third Mot. Default J., ECF No. 47. Regions did not file a response to Alvarez's motion for default judgment.

## DISCUSSION

### I.  Legal Standard

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Yet the entry of default judgment is not automatic, as the movant must demonstrate that it is entitled to judgment as a matter of law. *Cass Cnty. Music Co. v. Muedini*, 55 F.3d 263, 265 (7th Cir. 1995). Further, a default does not establish the veracity of allegations relating to damages. *Dundee Cement*, 722 F.2d at 1323. District courts enjoy "broad latitude in quantifying damages, especially when the defendant's own conduct impedes quantification . . . [—e]ven speculation has its place in estimating damages." *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014) (alterations in original) (quotation marks omitted). A hearing on damages should be held unless "the amount claimed is liquidated or capable of ascertainment from definite figures

contained in the documentary evidence or in detailed affidavits." *Dundee Cement*, 722 F.2d at 1323.

## II. Analysis

### A. Entitlement to Judgment

Alvarez asserts two theories of liability—breach of contract and violation of the SRA. As he requests different forms of relief under each theory, he must show his entitlement to judgment as a matter of law on each. *See* Compl. ¶ 19, ECF No. 49 at 11–16 (requesting damages, costs, and statutory interest); Am. Count II Compl. ¶ 43, ECF No. 26 (requesting attorneys' fees, costs, and trebled damages).[3]

Because this case invokes the Court's diversity jurisdiction and neither party has raised a choice-of-law issue, the Court applies the substantive law of Illinois to Alvarez's claims. *See Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016), *as amended* (Jan. 25, 2017).[4] If there are unanswered questions of state law, the Court predicts how the Illinois Supreme Court would resolve them, consulting "decisions of the state's intermediate appellate courts for guidance as necessary." *Straits Fin. LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 369 (7th Cir. 2018).

### 1. Breach of Contract

To maintain a claim for breach of contract, "the plaintiff must establish an offer and acceptance, consideration, definite and certain terms of the contract, [the] plaintiff's performance

---

[3] Alvarez's claims are alleged across two documents with duplicative paragraphs. *See* Am. Count II Compl. ¶¶ 1–16 (repeating and realleging paragraphs 1–16 of the unincluded Count I); Compl. ¶ 19 (final allegation of Count I).
[4] Although the writing which Alvarez uses to establish the terms of the oral contract between himself and Regions contains a choice-of-law provision which states that their agreement "shall be governed under the laws in the State of Texas," *see* Regional Sales Manager Agreement § XIV, Regions' failure to seek enforcement of that provision in this case means that Regions has forfeited this choice-of-law issue and the Court may apply the law of the forum state, Illinois, *see Huntley v. Tyrex Ore & Mins. Co.*, No. 1:20-cv-03235-JRS-MJD, 2023 WL 3848376, at *2–3 (S.D. Ind. June 6, 2023) (first citing *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014); and then citing *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019)).

of all required contractual conditions, the defendant's breach of the terms of the contract, and damages resulting from the breach." *Mannion v. Stallings & Co.*, 561 N.E.2d 1134, 1138 (Ill. App. Ct. 1990). "For an oral contract to exist, the parties must have a meeting of the minds with respect to the terms of the agreement and must intend to be bound by the agreement." *Williams v. Off. of Chief Judge*, 839 F.3d 617, 623 (7th Cir. 2016) (applying Illinois contract law). "Illinois courts have found that [t]he essential terms of a sales representative [agreement] include the commission structure, the territory, the services to be performed, the duration of the agreement and/or a termination provision." *Thompson Corrugated Sys., Inc. v. Engico, S.R.L.*, 111 F.4th 747, 752 (7th Cir. 2024) (alterations in original); *see also O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 365 N.E.2d 316, 318 (Ill. App. Ct. 1977). "The existence of an oral contract, its terms, and the intent of the parties are questions of fact . . . ." *Anderson v. Kohler*, 922 N.E.2d 8, 18 (Ill. App. Ct. 2009).

Taking Alvarez's factual allegations as true, the elements of offer, acceptance, consideration, Alvarez's performance, Regions' breach, and resulting damages are readily established. Although Alvarez does not specify who initiated the bargaining that led to their agreement on or about September 2020, offer and acceptance can be inferred from the parties' course of conduct, namely Regions encouraging Alvarez to secure construction contracts on its behalf and Alvarez securing those contracts. *See* Compl. ¶¶ 6–8, 10; *In re Marriage of Sherrick*, 573 N.E.2d 335, 337–38 (Ill. App. Ct. 1991) (finding "sufficient proof of an oral agreement consistent with [an] unsigned draft" as "[o]ral contracts are proved not only by what the parties have said, but by what they have done"). Consideration is satisfied by the exchange of promises—Regions would pay Alvarez and he would provide sales and project management services. *See* Compl. ¶ 5; *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1350 (Ill. 1997)

("[A] promise for a promise is, without more, enforceable.").  Alvarez performed his contractual

conditions by securing construction contracts for Regions.  *See* Compl. ¶¶ 8, 10; *see also* Invoice

No. 101, ECF No. 1-1 at 28–29 (listing those contracts).  Regions breached the contract when it

failed to pay him, and that caused him damages in the form of wrongfully denied compensation.

*See* Compl. ¶¶ 11–13, 18; *In re Ill. Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013)

("Damages which naturally and generally result from a breach are recoverable." (quotation

marks omitted)).

As to whether all the essential contract terms were sufficiently definite and certain, the

writing specified Alvarez's commission structure, *see* Compl. ¶ 5, his territory was the entire

United States with a focus on Illinois and Iowa, *see id.* ¶ 6; Regional Sales Manager Agreement

1 (specifying that Alvarez's responsibilities "regard[ed] all sales-related functions within the

United States"), his services included "soliciting, hiring, training, and managing all independent

contractors performing sales and marketing," Regional Sales Manager Agreement § II, and the

agreement was to automatically terminate "on December 31 of the first full calendar year

following the effective date of" the agreement, unless renewed, *id.* § VII.  The Court finds that

the oral contract between the parties contained sufficiently definite and certain terms.  *See*

*Thompson Corrugated Sys.*, 111 F.4th at 752–53.  As "[t]he existence of [the] oral contract, its

terms, and the intent of the parties are questions of fact" and default was entered against Regions,

the Court finds that Alvarez has established his entitlement to a judgment on his breach of

contract theory.  *See Kohler*, 922 N.E.2d at 18.

### 2.  Sales Representative Act

The SRA provides that "[a]ll commissions due at the time of termination of a contract

between a sales representative and principal shall be paid within 13 days of termination, and

commissions that become due after termination shall be paid within 13 days of the date on which

such commissions become due." 820 ILCS 120/2. The SRA defines "[s]ales representative" as

"a person who contracts with a principal to solicit orders and who is compensated, in whole or in

part, by commission" but excludes someone "who places orders or purchases for his own

account for resale or one who qualifies as an employee of the principal pursuant to the Illinois

Wage Payment and Collection Act." *Id.* § 120/1(4). Alvarez alleges that he was not Regions'

employee pursuant to the Illinois Wage Payment and Collection Act, *see* Am. Count II Compl.

¶ 35; Regional Sales Manager Agreement 1 (desiring Alvarez's services "as an independent

contractor and not as an employee"), and that he "did not place any orders with or purchase any

products from Regions for his own account for resale," Am. Count II Compl. ¶ 34. The Court

finds that Alvarez was a sales representative, as defined by the SRA.

The SRA defines "[p]rincipal" to include a corporation which "(A) Manufactures,

produces, imports, or distributes a product for sale; (B) Contracts with a sales representative to

solicit orders for the product; and (C) Compensates the sales representative, in whole or in part,

by commission." 820 ILCS 120/1(3). Regions contracted with Alvarez to solicit orders from

customers and compensated him in part by commission. Am. Count II Compl. ¶¶ 32–33.

Therefore, if Regions distributed a product for sale, it is a principal and Alvarez may be entitled

to relief under the SRA.

Contracts for services generally do not entitle a sales representative to relief under the

SRA as a service is not a product under the SRA. *See, e.g.*, *Johnson v. Safeguard Constr. Co.*, 3

N.E.3d 879, 881–82 (Ill. App. Ct. 2013) (noting that the SRA's use of products is "evidence of

the legislature's clear intent that the [SRA] apply only to purveyors of tangible goods, not

services" (quotation marks omitted)). The Court previously dismissed Alvarez's SRA claim

because he had failed to allege that (1) he procured contracts for a product, *i.e.*, a tangible good; (2) the underlying tangible good was manufactured, produced, imported, or distributed by Regions; and (3) the tangible good was the focus of the contracts.  Sept. 14, 2022 Order 4–8. The Court relied heavily on *Johnson*, in which the Illinois Appellate Court found that a corporation that facilitated home repairs was not a principal under the SRA—*i.e.*, it did not manufacture, produce, or distribute a product—because "the main purpose of the contracts that [the plaintiff] solicited from homeowners was to provide *repair services* to their damaged homes, and any tangible goods associated with the repair work were merely incidental to the services provided," *Johnson*, 3 N.E.3d at 883; *see also id.* at 884 (finding that the SRA requires "that a tangible product sold must be a main purpose and focus of the client contracts"); *Tenan v. StrategIQ Com., LLC*, 364 F. Supp. 3d 910, 920–21 (N.D. Ill. 2019) (holding that the defendant was not a principal under the SRA and rejecting the plaintiff's argument that the provision of data reports was sufficient to make the defendant a principal as "the reports [the defendant] generated were incidental to the services it provided").

Alvarez's amended version of his SRA claim addresses those identified pleading deficiencies.  He alleges that he would present the customers he solicited with samples of exterior construction products, the customers would pick out their desired products, he would execute a contract with the customers' preferred products specified in that contract, Regions would place orders for those products, and Regions would arrange for the products' delivery to those customers.  Am. Count II Compl. ¶¶ 21–23.  Regions would profit from these sales by charging its customers more than what it paid for the products.  *Id.* ¶ 25.  Alvarez asserts that the main purpose of the contracts which he secured for Regions was therefore the sale of tangible goods, specifically exterior construction products.  *See id.* ¶ 26.  A recent, albeit unpublished,

Illinois Appellate Court decision found that materially identical allegations were sufficient to withstand a motion to dismiss under Illinois law.  *See Santillan v. Calderon's Constr. of RI, Inc.*, 2024 IL App (4th) 230581-U, ¶ 19.

Given this case's default posture, Alvarez's entitlement to relief under the SRA boils down to whether his allegation regarding the main purpose of the customer contracts is a legal conclusion or a well-pleaded allegation of fact which the Court must take as true.  Illinois courts approaching a similar question of whether the UCC applies to a particular contract—it applies when the predominant purpose of a contract is for goods—state that "the determination of the predominant purpose of a contract is usually a question of fact."  *See, e.g.*, *Bruel & Kjaer v. Village of Bensenville*, 969 N.E.2d 445, 450 (Ill. App. Ct. 2012).  Rather than present evidence regarding the ratio of products to services in the underlying customer contracts or legal argument that the products provided were merely incidental to services provided, Regions defaulted.  *See* Jan. 5, 2024 Entry of Default.  Because the main purpose inquiry is a factual one and Regions' default establishes the veracity of Alvarez's factual allegations of liability, he has demonstrated that he may hold Regions liable as a principal under the SRA.

## B.  Damages

The Court turns to whether Alvarez has shown that his damages are "liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits."  *Dundee Cement*, 722 F.2d at 1323.

### 1.  Breach of Contract

Alvarez's breach of contract damages can be grouped into three categories: (1) 5% incentive bonus applied to total construction contract prices secured for Regions; (2) $3,000 bonus for every $250,000 in total sales; and (3) commission of 50% of net profit for each job

completed and paid.  Compl. ¶ 5.  Alvarez has sufficiently supported his entitlement to damages

on the first two categories.  He provided redacted copies of ten contracts which he executed with

Regions' customers, totaling $207,548.56.  *See id.* ¶ 13; Redacted Customer Contracts.[5]  He also

submitted an invoice documenting more contracts which he secured, totaling $1,005,925.50.  *See*

Invoice No. 101, ECF No. 1-1 at 28–29.  Per the oral contract, Alvarez is entitled to an incentive

bonus of $50,296.28 and an additional bonus of $12,000.

Less clear is the amount owed to him as commission.  Alvarez blames Regions'

"refus[al] to provide [him] with the labor and material costs for the [at-issue] contracts to allow

[him] to accurately calculate the amount of commissions owed for each job," and states that,

based upon his experience, "Regions' net profit is typically fifty percent (50%) of the total

contract price."  Compl. ¶¶ 14–15.  While the Court has "broad latitude in quantifying damages,

especially when the defendant's own conduct impedes quantification," *Domanus*, 742 F.3d at

303 (quotation marks omitted), this sort of unreasoned and self-serving speculation is not

sufficient to estimate net profits, *see e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 603

(7th Cir. 2007) (vacating damages award which was based upon "a conclusory statement of the

lost value of [the] business" and remanding for further inquiry into damages).

However, the Court need not rely on that conclusory and self-serving estimate of net-

profit.  Laura Anderson—an insurance consultant for Regions—compiled an "estimate based on

legitimate damage . . . [and] a reasonable method of repair," for one of the at-issue contracts.

*See* Apr. 20, 2021 Letter from Laura Anderson 2, ECF No. 22 at 14–21.  Attached was a

---

[5] The value of two of the contracts—specifically those of customers Michael Fitzsimmons and Michael
Thompson—was increased from the initial figures recorded on the standardized form contract.  *See* Mem. Supp.
Third Mot. Default J. 3–4 (asserting valuations for the contracts with Fitzsimmons and Thompson); General
Contract: Fitzsimmons, ECF No. 22 at 10 (indicating an original estimate of "$10,280.35+supplements"); Invoice
No. 0136, ECF No. 22 at 11 (revising that estimate to $32,175.03); General Contract: Thompson, ECF No. 22 at 12
(indicating an original estimate of "$25,657.33+supplements"); Claim Number: AA73800, ECF No. 22 at 13–21
(revising that estimate to $32,932.81).

"component based line item scope of work," *id.*, which separately itemized the profit Regions

expected for the job, *id.* at 6.  The estimated profit was $2,724.15 on the $32,689.60 job, which

results in a net-profit rate of 8.33%.  *See id.*  The Court finds that the April 20, 2021 letter is

competent evidence from which it can estimate the net profit of a given job, and therefore

Alvarez's damages.  *Cf. Domanus*, 742 F.3d at 303.  Alvarez seeks commission payments on ten

contracts, which have an aggregated total contract price of $207,548.56.  Compl. ¶ 13.  Based

upon a net-profit rate of 8.33%, these contracts generated $17,288.90 in net profit.  As the oral

contract entitled him to 50% of the net profit for these contracts, the Court finds that Alvarez is

owed $8,644.40 in unpaid commissions.  In total, Alvarez has shown an entitlement to

$70,940.68 in damages for breach of contract.

### 2.  Prejudgment Interest

Alvarez requests that the Court award statutory prejudgment interest pursuant to the

Illinois Interest Act.  Mem. Supp. Third Mot. Default J. 4 (citing 815 ILCS 205/2).[6]  He alleges

that he stopped performing services for Regions on May 20, 2021, Am. Count II Compl. ¶ 37,

and that he is owed prejudgment interest at a rate of 5% per annum from that date onward,

Compl. ¶ 19.  He perfunctorily asserts that he is entitled to prejudgment interest because Regions

unreasonably and vexatiously delayed payment.  *See* Mem. Supp. Third Mot. Default J. 4.  The

Court has discretion whether to allow for statutory interest.  *See Bank of Chi. v. Park Nat. Bank*,

640 N.E.2d 1288, 1296 (Ill. App. Ct. 1994).  "Merely conducting a defense, where there is an

honest dispute as to the existence of a legal obligation, does not constitute an unreasonable and

vexatious delay unless the plaintiff can establish conduct by a litigant which approximates actual

fraud."  *Charles Selon & Assocs., Inc. v. Aisenberg's Est.*, 431 N.E.2d 1214, 1218 (Ill. App. Ct.

---

[6] "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on . . . on money withheld by an unreasonable and vexatious delay of payment."  815 ILCS 205/2.

1981); *see also Gen. Dynamics Corp. v. Zion State Bank & Tr. Co.*, 427 N.E.2d 131, 133–34 (Ill.

1981) (recognizing this good faith exception); *In re Est. of Feinberg*, 6 N.E.3d 310, 347–48 (Ill.

App. Ct. 2014); *Boyd v. United Farm Mut. Reinsurance Co.*, 596 N.E.2d 1344, 1350 (Ill. App.

Ct. 1992).

 Regions initially filed an answer in this case, denying that it breached its oral contract

with Alvarez. *See generally* Am. Answer & Countercls. Alvarez did not allege any facts

demonstrating that Regions' refusal to pay was unreasonable and vexatious. *See* Compl. ¶ 19

(asserting the legal conclusion that he is entitled to such interest). Nor does he attempt to argue

why Regions' mere withholding of payment justifies the award of prejudgment interest. Mem.

Supp. Third Mot. Default J. 4. Without those factual allegations or legal argument, prejudgment

interest would be awarded as a matter of course whenever a defendant refused some demand for

payment upon an oral contract, rendering superfluous the statutory language of "unreasonable

and vexatious delay." *See* 815 ILCS 205/2. Regions mounting a defense does not itself justify

the award of prejudgment interest. *See Charles Selon & Assocs.*, 431 N.E.2d at 1218. While the

Court previously found a clear record of delay after Regions' attorneys withdrew from the instant

case, *see* Jan. 8, 2024 Text Order, that delay was related to the prosecution of its counterclaim,

not the payment of money, *see Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1045 (N.D. Ill.

2023) (emphasizing that the Illinois Interest Act "specifically refers to '*money* withheld by an

unreasonable and vexatious *delay of payment*'" (quoting 815 ILCS 205/2)). Because Alvarez

failed to make sufficient factual allegations and develop his argument that Regions' refusal to

pay rose above the level of an honest dispute as to a legal obligation, the Court declines to award

prejudgment interest.

### 3. Sales Representative Act

Under the SRA, Alvarez seeks exemplary damages, costs, and attorneys' fees. Am. Count II Compl. ¶ 43. He emphasizes that the SRA uses the word "shall" with respect to these remedies. *See* Mem. Supp. Third Mot. Default J. 7–8; 820 ILCS 120/3 (providing that a principal "*shall* be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative" and that "such principal *shall* pay the sales representative's reasonable attorney's fees and court costs" (emphasis added)). "Despite this ostensibly mandatory language, however, courts have construed the [SRA] as permitting exemplary damages 'only when the sales representative proves that the principal willfully and wantonly refused to pay.'" *Maher Eng'g Co. v. Screwmatics of S.C., Inc.*, No. 14 CV 3761, 2014 WL 4979167, at *2 (N.D. Ill. Oct. 6, 2014) (quoting *Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 573 (7th Cir. 1995)); *see also Cent. Tower Exch. Corp. v. German Motor Parts GmbH*, 518 F. Supp. 3d 1233, 1244–46 (C.D. Ill. 2021) (collecting cases and concluding that it would "not depart from established Illinois precedent or binding Seventh Circuit precedent," despite misgivings about this interpretation of "shall").

Punitive or exemplary damages are meant to punish and deter, not compensate, and under Illinois law such damages "may be awarded only for conduct involving an element of outrage similar to that normally found in crime." *Maher & Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1008 (Ill. App. Ct. 1994). For example, a court dismissed the plaintiff's SRA theory of recovery despite the defendant's "shabby" conduct, such as reimbursing certain expenses only after those expenses were the subject of deposition testimony in the case and misleading the plaintiff "to keep [him] working hard at promoting [the defendant]'s products for the future, knowing—as [he] did not—that [the defendant] and not [he] would reap the fruits of his labor."

*See Kelly v. McGraw-Hill Cos., Inc.*, 865 F. Supp. 2d 912, 920–22 (N.D. Ill. 2012).  The court acknowledged that the defendant's "conduct toward[s] [the plaintiff] left a good deal to be desired," but found that such a showing was insufficient under the SRA.  *Id.* at 921–22. Similarly, an Illinois Appellate Court affirmed the trial court's denial of exemplary damages under the SRA where the defendant had refused demands for payment and pursued counterclaims against the plaintiff, restating that "[n]o automatic award of exemplary damages is granted for every violation of the [SRA]."  *Stern Ingredients, Inc. v. Lawrence Foods, Inc.*, 2017 IL App (1st) 143417-U, ¶¶ 58–63 (citing *Installco Inc. v. Whiting Corp.*, 784 N.E.2d 312, 320 (Ill. App. Ct. 2002)).

Alvarez has established that Regions failed to pay him compensation, which was owed to him under their oral contract, despite repeated demands for payment.  Compl. ¶¶ 11, 13.  But he has made no attempt to show that Regions "willfully and wantonly refused to pay."  *See Wolens*, 63 F.3d at 573.  As with his attempt to obtain prejudgment interest, Alvarez rests solely upon Regions' refusal to pay and the relevant statutory language in his request for exemplary damages.  *See* Mem. Supp. Third Mot. Default J. 7–8.  But the mere refusal to pay standing alone cannot satisfy "the extremely high level of culpability demanded by Illinois caselaw" to impose exemplary damages under the SRA.  *See Kelly*, 865 F. Supp. 2d at 921; *Stern Ingredients*, 2017 IL App (1st) 143417-U, ¶¶ 58–63.  The Court finds that Alvarez has not established his entitlement to exemplary damages under the SRA.

Unlike exemplary damages, Alvarez need not make any culpability showing to obtain reasonable attorneys' fees and costs under the SRA "because 'these damages are compensatory and not punitive and because the plain language of section 3 of the [SRA] provides that attorney fees and costs 'shall' be imposed for a violation of section 2 of the Sales Act.'"  *Cent. Tower*

*Exch.*, 518 F. Supp. 3d at 1246 (quoting *Maher & Assocs.*, 640 N.E.2d at 1009). The movant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Vega v. Chi. Park Dist.*, 12 F.4th 696, 702 (7th Cir. 2021) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). A district court "must exclude hours that were not reasonably expended," but need not "achieve auditing perfection." *Id.* at 704–05 (quotation marks omitted). Here, two attorneys and one legal intern worked on Alvarez's case—Keisha N. Douglas worked 58.9 hours; James S. Zmuda worked 2.2 hours; and legal intern Clarise A. Tuinstra worked 5.1 hours. Time Sheet 7, Aff. Att'y Fees Costs Ex. 1, ECF No. 47-1 at 4–8.[7] The Court finds that all these hours were reasonably expended on Alvarez's case and that no hours must be excluded. *See Vega*, 12 F.4th at 704–05.

As to the reasonableness of the rates requested:

A reasonable hourly rate is based on the local market rate for the attorney's services. The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases. The party seeking a fee award bears the burden of establishing the market rate for the work; if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate.

*Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (citations omitted). "While an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services, such affidavits in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiffs' burden." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000). Alvarez seeks an hourly rate of $175 for Douglas, $230 for Zmuda, and $170 for Tuinstra, resulting in a requested total fee award of $11,680.50. Aff. Att'y Fees Costs

---

[7] The declaration and time sheet are continuously paginated, so although the time sheet is only 5 pages total, the total hours expended is on page 7 of the joint document. The Court uses the existing page numbers for ease of reference.

¶¶ 5–6, Mem. Supp. Third Mot. Default J. Ex. A, ECF No. 47-1 at 1–3.  The only support which Alvarez provides for the reasonableness of these rates is Douglas's affidavit, wherein she avers that the "fees are reasonable under the circumstances, based upon the knowledge and experience of counsel and staff."  *Id.* ¶ 7.  This affidavit by itself is insufficient to justify the requested rates, such that the Court may independently determine a reasonable rate.  *See Montanez*, 755 F.3d at 553.

When considering the rates awarded for similar commercial litigation in Illinois, the rates requested for Douglas and Zmuda are in line with—if not lower—than other approved rates. *See, e.g.*, *Thompson Corrugated Sys., Inc. v. Engico S.r.l.*, No. 20-cv-122-JPG, 2023 WL 197025, at *5–6 (S.D. Ill. Jan. 17, 2023) (approving rates ranging from $350 to $450 for an SRA case in the Southern District of Illinois); *Thomas v. Weatherguard Constr. Co., Inc.*, 125 N.E.3d 1000, 1009, 1018 (Ill. App. Ct. 2018) (affirming fee award for an hourly rate of $350—which was "on the lower end of the prevailing rate"—in case concerning liability for unpaid commissions under the Illinois Wage Payment Act, 820 ILCS 115/1 (quotation marks omitted)); *cf. Rodesky v. Pfister*, No. 15-cv-1002-JEH, 2023 WL 2585856, at *4–6 (C.D. Ill. Feb. 21, 2023) (reducing requested rates for Chicago-based attorneys to $450, $400, and $350 to reflect the rates in the Central District of Illinois in prisoners-rights case), *appeal dismissed sub nom. Rodesky v. Jeffreys*, Nos. 23-1403 & 23-1509, 2023 WL 5608424 (7th Cir. Apr. 19, 2023).  The Court finds that the requested rates for Douglas and Zmuda are reasonable.

As to the requested rate of $170 for Tuinstra, Alvarez refers to her as "a legal intern," providing no information about her background or qualifications, *i.e.*, whether she was even in law school at the time of working on his case.  *See* Aff. Att'y Fees Costs ¶ 5.  "[O]ther district courts in this circuit have found billing rates between $90 per hour and $175 per hour to be

16

reasonable for law-student interns like those in this case." *Spencer v. Vagnini*, No. 16-cv-662-pp, 2022 WL 17967210, at *7 (E.D. Wis. Dec. 27, 2022) (collecting authorities and reducing the interns' requested hourly rate from $150 to $90 for work conducted in 2022). Because Alvarez provides such little information about Tuinstra, the Court finds that her rate must be reduced to $90 per hour. *See id.* The portion of the requested award attributable to Tuinstra is therefore reduced from $867 to $459. Alvarez is entitled to $11,272.50 in attorneys' fees.

The final form of requested relief is the recovery of Alvarez's costs. *See* Third Mem. Supp. Mot. Default J. 8. The costs for filing fees and service of process are recoverable. *See Barn II, Inc. v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-01184-JEH, 2019 WL 4266520, at *7–8 (C.D. Ill. Mar. 22, 2019). He seeks a total of $349.68 in filing fees, which is allowed. Time Sheet 7. However, as to the service of process fees, totaling $291, the affidavit does not sufficiently describe them—it simply lists three different line items and a cost without describing the who, where, or when for these costs. *See id.* Alvarez has not sufficiently supported his entitlement to recover these costs for service of process, so the Court excludes them. *See Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996) (allowing recovery of service expenses where the expenses did not exceed what the marshal would have charged for those tasks); *Young v. Alden Gardens of Waterford, LLC*, 30 N.E.3d 631, 658 (Ill. App. Ct. 2015) (affirming trial court's decision to "limit[] recoverable costs to those of which it could take judicial notice, *i.e.*, the court's filing fee and the sheriff's fee for service of process"). Alvarez's requested costs are therefore reduced by $291. *See* Time Sheet 7.

Alvarez also seeks the recovery of "Computer Research" expenses as costs. *Id.* Under federal law those expenses are properly categorized as attorneys' fees, not costs. *See, e.g.*, *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1129 (7th Cir. 2023) (citing

17

*Haroco, Inc. v. Am. Nat'l Bank & Tr. Co.*, 38 F.3d 1429, 1440 (7th Cir. 1994)).  Illinois law distinguishes between contingent and hourly billing arrangements—where an attorney charges his client on an hourly basis, computer research fees are recoverable as attorneys' fees, not costs. *See Abramson v. Abramson*, 2023 IL App (1st) 220994-U, ¶ 46 (citing *Johnson v. Thomas*, 794 N.E.2d 919, 935–36 (Ill. App. Ct. 2003)).  Because Alvarez's attorneys billed hourly, research fees are recoverable only as attorneys' fees regardless of whether state or federal law governs. Recovery is precluded here, however, because Alvarez has not met his burden of demonstrating his entitlement to these fees.  *See Vega*, 12 F.4th at 702.  Again, he simply lists two line items and a dollar amount, with no information about what was researched, for how long, or for what purpose.  *See* Time Sheet 7.  Such a conclusory showing is insufficient for attorneys' fees and Alvarez's $419 in computerized research fees are excluded from his award.  *See, e.g.*, *Lizak v. Great Masonry, Inc.*, No. 08-C-1930, 2010 WL 3001906, at *1–2 & n.2 (N.D. Ill. July 29, 2010) (noting that the movant's request for the recovery of computerized research expenses was not "substantiated with evidence, like Lexis billing records, revealing the purpose of the charges, or demonstrating that the costs were reasonably incurred in litigation," in case where attorneys' fees were recoverable under both state and federal law).  Based on the foregoing exclusions, Alvarez is entitled to $349.68 in costs, for a total award of $11,622.18 in attorneys' fees and costs.

## CONCLUSION

Accordingly, Plaintiff Miguel A. Alvarez's Third Motion for Default Judgment, ECF No. 46, is GRANTED IN PART and DENIED IN PART.  Alvarez is awarded $70,940.68 in damages and $11,622.18 in attorneys' fees and costs, which combine for a total award of $82,562.86.  The Clerk is directed to enter judgment and close the case.

Entered this 27th day of September, 2024.

s/ Sara Darrow

SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE